UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

TAVON TURNER, on behalf of himself and        Case No. 24-8296
all others similarly situated,

                    Plaintiff,           **CLASS ACTION COMPLAINT
                                       & DEMAND FOR JURY
        v.                            TRIAL**

CANNABOY TREEHOUSE LLC,

                    Defendant.
----------------------------------------------------------------

       Plaintiff, **TAVON TURNER** ("Plaintiff" or "Mr. Turner"), on behalf of himself and all

others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel,

JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant,

CANNABOY TREEHOUSE LLC ("Defendant"), hereby alleges as follows:

## INTRODUCTION

      1.     Plaintiff is a visually-impaired and legally blind person who requires screen-reading

software to read website content while using his computer. (**Ex. A** – TAVON TURNER, Legally

Blind Diagnosis, dated 10/16/2024). Plaintiff uses the terms "blind" or "visually-impaired," as

Plaintiff's central visual acuity with correction is less than or equal to 20/200. Some sight-impaired

individuals who meet the definition have limited vision while others have zero vision.

      2.     Defendant, CANNABOY TREEHOUSE LLC, is a New Jersey Limited Liability

company that owns and maintains a physical dispensary at 57 W. South Orange Ave., South

Orange, New Jersey, 07079, and associated Website, www.cannaboytreehouse.com. (the

"Website" or "Defendant's Website")

3.      Plaintiff brings this civil action against Defendant for their failure to design, construct, maintain, and operate the Defendant's Website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to the Website, www.cannaboytreehouse.com and therefore its denial of the goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

4.      The Website www.cannaboytreehouse.com provides to the public a wide array of goods, services, price specials, and events offered by CANNABOY TREEHOUSE LLC. Yet, www.cannaboytreehouse.com contains numerous access barriers that make it difficult if not impossible for blind customers to use the website. In fact, the access barriers make it impossible for blind users to even complete a transaction on the website. Thus, Defendant excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind persons to fully and independently access a variety of services.

5.      The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with Defendant's website and from purchasing goods or services from Defendant's website.

6.      Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which make use of alternative text, accessible forms,

descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface. Defendant's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on www.cannaboytreehouse.com.

7.      By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

8.      Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

9.      Plaintiff browsed and intended to make an online purchase of cannabis infused gummies on www.cannaboytreehouse.com. However, unless Defendant remedies the numerous access barriers on its website, Plaintiff and Class members will continue to be unable to independently navigate, browse, use and complete a transaction on www.cannaboytreehouse.com.

10.     Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant is in violation of the ADA. Plaintiff now seeks a permanent injunction to cause a change in the Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired

consumers.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over the action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

12.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's pendent claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq*.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") & § 296 *et seq*.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) - (c) and 144(a) because Plaintiff resides in this District, and that Defendant conducts and continues to conduct a substantial and significant amount of business in this District, via the Internet and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on a number of occasions, the subject Website within the Southern District of New York based upon Plaintiff's Westchester County residence.

14.     Defendant CANNABOY TREEHOUSE LLC has been conducting business in New York State by purposely targeting and otherwise soliciting business from New York State residents via its highly interactive Website, www.cannaboytreehouse.com. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District.  A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this

District. on several separate occasions.

15.     Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered to the general public on Defendant's Website in New York County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing the Defendant's Website www.cannaboytreehouse.com in the future. Relevant precedent has established that venue is proper in the district in which Plaintiff tried and failed to access a website. [1]

16.     The United States Department of Justice Civil Rights Division recently stated that the ADA's requirements apply to all goods, services, privileges, or activities offered by public ac commodations, including those classes of individuals protected under the ADA, pursuant to 42 U .S.C. § 12102(1),(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., and the New York State Human Rights Law, as codified at NY Exec. Law §§ 290 et seq.

17.     Defendant CANNABOY TREEHOUSE, LLC is a New Jersey Limited Liability company which operates the commercial Website, www.cannaboytreehouse.com. The Website and the goods and services offered thereupon, is a "public accommodation" within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(j). *See Andrews v. Blick Art Materials, LLC*, 268 F.Supp.3d 381 (E.D.N.Y. 2017); *Romero v. 88 Acres Foods, Inc.,* 580 F.Supp.3d 9 (S.D.N.Y. 2022).

---

[1] *See, e.g. Chloe NA v. Queen Bee of Beverly Hills, LLC.,* 616 F.3d 158 (2d Cir. 2010*); Reed v. 1-800-Flowers.com, Inc.,* 327 F.Supp.3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials*, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S.Ct. 1017 (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products).

## NATURE OF ACTION

18.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

19.    In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen reading software, blind, and visually-impaired persons are unable to fully access websites, and the information, products, goods and contained therein.

20.    Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screens-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately, such as the popular screen-reading software program for a Windows computer, Nonvisual Desktop Access or "NVDA."

21.    For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

22.    Screen readers have rules and expectations about what the gathered information is

and should be and uses sophisticated rules to interpret what it has "seen" i.e., gathered with help from the operating system, the app in question, and other ways. Based on information gathered and subsequently interpreted, screen readers use components such as text-to-speech (TTS), braille, and other output mechanisms to present screen content. (*see, e.g.,* NVDA illustration below):



23.    The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

24.    Non-compliant websites pose common access barriers to blind and visually

impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.  A text equivalent for every non-text element is not provided;

b.  Title frames with text are not provided for identification and navigation;

c.  Equivalent text is not provided when using scripts;

d.  Forms with the same information and functionality as for sighted persons are not provided;

e.  Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.  Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.  If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.  Web pages do not have titles that describe the topic or purpose;

i.  The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.  One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.  The default human language of each web page cannot be programmatically determined;

l.  When a component receives focus, it may initiate a change in context;

m.  Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.  Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or he is not a robot;

8

o.    In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.    Inaccessible Portable Document Format (PDF); and

q.    The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

25.    Websites have features and content that are modified on a daily, and in some instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STANDING

26.    Plaintiff, TAVON TURNER, is a blind, visually-impaired disabled person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL. For Plaintiff to access the Internet, he must utilize a computer which contains a screen-reader, such as "NVDA for Windows."

27.    Screen reader software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art*

*Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017) As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay the same information. When a sight impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link says the word "clickable."…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with the keyboard."

*Id.* at 373. *see also* American Federation for the Blind, Screen Readers, https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on October 18, 2024; estimating 26.0 million adult American reported sight deficiency).

28.    Plaintiff was injured when attempting to access Defendant's Website, www.cannaboytreehouse.com around October 14, 2024, from his home in Bronx, New York, in an effort to search for and purchase Defendant's products and services, including their premium Sativa edible, "**Strawberry Lemonade lozenge, by Valhalla**," sold for $20.00 (plus tax) *See* www.cannaboytreehouse.treez.io/onlinemenu/category/edible/item (last accessed October 18, 2024)

29.    Approximately 20 years ago, the Plaintiff's life was irrevocably altered. While a passenger in a moving vehicle, an accident occurred in which a tree branch struck and penetrated Plaintiff's right eye. This traumatic event led to Endophthalmitis, a severe infection in both eyes,

resulting in progressive blindness and persistent, migraine-level headaches.

30.    The initial years post diagnosis saw Plaintiff relying on prescribed medications to manage the relentless pain. Recognizing the dangers of dependency, Plaintiff made the decision to cease the use of those prescribed medications upon discovering that specific strains of marijuana (and related products) could also provide significant pain relief and is legal and can be shipped anywhere in the United States, including New York. Consequently, Plaintiff has been sourcing both smokeless and edible forms of marijuana from various providers, many of which operate in the legal gray area, operating without regard for the law or the well-being of their customers. These companies, often operating in the shadows, have shown a blatant disregard for the safety and health of their consumers, including the Plaintiff. They exploit the desperation of individuals like the Plaintiff simply seeking relief from the physical pain and discomfort.

31.    The Website itself provided basic information about most of the products, including its origin, strain type, and in some cases, the THC content. The level of detail was not only informative but also crucial for the Plaintiff, who relies on specific strains to manage his ailments. However, despite the Websites apparent thoroughness and transparency, Plaintiff encountered significant accessibility barriers that prevented him from fully utilizing its services, when he attempted to access the site by himself to discover crucial information regarding the presence of any contraindications therein. This has not only limited his ability to make informed decisions but also infringed on his rights as a consumer and individual with a disability.

32.    First, the Website www.cannaboytreehouse.com contains numerous individual products, each with its own "product tile" or "product card," a separate area that displays the products image, name, price, and other relevant information. Each product tile contains a "link,"

11

which serves as a navigational tool that directs users to different sections of the site or to an entirely different site altogether. When clicked, it transports the user from their current location to the destination specified by the link. In the context of product tiles, each tile contains a link that, when clicked, brings the user to a specific product page allowing the user to explore more details. This allows the user to explore more details, such as its features, pricing, and reviews. Therefore, links play a crucial role in enhancing user experience, facilitating easy navigation, and structuring their websites information hierarchy. They are fundamental to the interconnected nature of the Internet.

33.     However, a link without an accessible name can significantly impact the blind user who relies on a screen reader. If a link lacks an accessible name, the screen reader may not be able to provide meaningful information about the links function or destination. They can lead to confusion and difficulty in navigation for the user. It is crucial for web accessibility that all links have descriptive and unique and accessible names. This ensures that screen reader users can understand and use the website effectively, enhancing their overall user experience. It is not just good practice, but it's also a requirement under the Web Content Accessibility Guidelines. which ideally brings the user to that specific product

34.     Plaintiff sought information about their '**"Strawberry Lemonade lozenge, by Valhalla,**' which was highly recommended and which Plaintiff understood to contain properties that helps the user with "creativity," "energy," "focus," "depression," and "inspiration." Moreover, the specific strain helps alleviate moderate pain stemming from migraine headaches.

35.     However, when attempting to discover crucial medical information about this product and others with similar properties from the Website, including any potential contraindications, Plaintiff was unable to discern any further information other than what was

contained within the Product Tile, as a result of "Redundant Alternative Text," "Linked Images Missing Alternative Text," and "Missing Form Labels."

36.     The lack of information caused Plaintiff to suffer confusion and exasperation while navigating www.cannaboytreehouse.com as a result of the aforementioned access barriers but did not deter Plaintiff from trying again on October 15, 2024, to determine whether the website was brought up-to-date, or sufficiently altered to allow Plaintiffs understanding of the Webpages content. However, despite Plaintiff's attempt to access the information, the Website was not as of that point, remediated.

37.     As a result of visiting Defendant's Website from his home, Plaintiff is aware that significant portions of www.cannaboytreehouse.com  are unusable, due to various barriers that deny his full and equal access to Defendant's online products and services.

38.     On October 24, 2024, Plaintiff's counsel conducted accessibility audits of www.cannaboytreehouse.com to corroborate the existence of those barriers which prevented Plaintiff from conducting a search for desired products, information, and services and the potential purchase of the same. Specifically, Plaintiff's counsel conducted an accessibility audit using the "Web Accessibility Evaluation Tool," (WAVE) This program confirmed the presence of multiple violations of the ADA, as reflected within the completion of said audits *See* **Ex. B – WAVE Report**, which indicated the presence of multiple errors, including but not limited to: numerous product images displaying identical text despite being entirely different items, located in various sections of the website. This inconsistency caused the Plaintiff extreme confusion, as he was unable to differentiate between the products. Additionally, the audit revealed Broken Links; Contrast Errors; Suspicious Alternative Text; Skipped Heading Levels; and Null Alternative Text; amongst other

barriers, each of which when encountered by Plaintiff in this case caused his confusion and exasperation when unable to discern crucial information about the desired products.

39.    Due to the aforementioned (and many other) access barriers, which prevented Plaintiff from discerning crucial information about the desired goods and services, Plaintiff was unable to complete his search and purchase those desired products and services.

40.    The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by removing these and all existing access barriers. Plaintiff has been, and in absence of an injunction, will continue to be injured by Defendant's failure to provide the online content and services in a manner that is compatible with screen reader technology.

41.    Defendant's denial of full and equal access to and enjoyment of the goods, benefits, and services of the Website, has caused Plaintiff to suffer an injury in fact due to Plaintiff's inability to purchase the desired items, which is a concrete and particularized injury, and is a direct result of Defendant's conduct.

42.    Despite the direct harm and frustration, Plaintiff is determined to access the Website again – following their remediation. Plaintiff's aim is to explore and purchase from the broad array of products offered by Defendant with the goal to identify the most suitable products (whether marijuana or related products) which could potentially ease the symptoms caused by the disease which had caused his blindness and constant headaches with migraine level pain. Plaintiff intends to utilize the services of Defendant, and their Website, www.cannaboytreehouse.com, because he has in the past utilized similar websites that took advantage of his physical condition by failing to send the ordered products or if sent, the desired product would not be the one advertised. but Plaintiff's online research revealed that this company is one of the more-reputable companies, and

14

their products extremely cost-effective, and contain thousands of related products which may potentially rid Plaintiff of his headaches.

43.    Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.    Constructing and maintaining a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.    Failing to construct and maintain a Website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and

c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

44.    Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

45.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

In the case of violations of . . . the title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

46.    Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the website to

15

become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Websites. Plaintiff seeks that the permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

    a.    Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

    b.    Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

    c.    Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant Website complies under the WCAG 2.1 guidelines; and;

    d.    Develop an accessibility policy that is clearly disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

47.    Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

48.    Upon information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from their online platforms. These amounts are far greater than the associated cost of making Defendant's Website equally accessible to visually impaired customers. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website.

**CLASS ACTION ALLEGATIONS**

49.     Plaintiff, TAVON TURNER, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

50.     Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered, during the relevant statutory period.

51.     Common questions of law and fact exist amongst the Class, including:

    a.    Whether Defendant's Website is a "public accommodation" under the ADA;

    b.    Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

    c.    Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

    d.    Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

52.     Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA, NYSHRL, NYCRL and/or the NYHRL by failing to update or remove access barriers on the

Website so that the websites can be independently accessible to the Class.

53. Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

54. Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

55. Judicial economy will be served by maintaining the lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

56. Moreover, judicial economy will be served maintaining the lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

### FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

57. Plaintiff, TAVON TURNER, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

59.    Defendant's physical dispensary, & concomitant Website are a "public accommodation" within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website that is offered as a link to the dispensary and entity is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

60.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

61.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

62.    The acts alleged herein constitute violations of Title III of the ADA, and the

regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

63.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated Therein, Plaintiff requests relief as set forth within the section titled Prayer For Relief below.

## SECOND CAUSE OF ACTION
### (Violations of the New York City Human Rights Law)
### ("NYCHRL")

64.    Plaintiff, TAVON TURNER, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

65.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

66.     Defendant's physical establishment ("the dispensary") is unquestionably a place of "public accommodation" within the definitions of N.Y.C. Admin. Code § 8-102, and their Website, www.cannaboytreehouse.com which offers products, services and information is an extension to that physicality and as such, is also considered a place of public accommodation," within the definition of N.Y.C. Admin. Code § 8-102(9).

67.     Defendant is subject to NYCHRL because it owns and operates the Website www.cannaboytreehouse.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

68.     Defendant is in violation of N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website causing the Website and the services integrated completely inaccessible to the blind. The inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

69.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide  a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

70.     Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a.  constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.  constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.  failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

71.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

72.     As such, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and other members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

73.     Defendant's actions were and are in violation of the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

74.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

75.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

76.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

77.    Plaintiff, TAVON TURNER, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

78.    At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

79.    Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

80.    Defendants, at all relevant times to this action, own and operates a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

81.    Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

82.    Pursuant to Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

83.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

84.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  The inaccessibility denies disabled individuals who are sight-impaired, full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

85.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

86.    Established guidelines exist for making websites accessible to disabled individuals.

The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

87.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

88.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass causing irreparable harm.

89.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties and fines for each and every discriminatory act in addition to reasonable attorney fees and costs and disbursements of their action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

### FOURTH CAUSE OF ACTION
**(Violation of New York State Civil Rights)**
**("NYCRL")**

90.    Plaintiff, TAVON TURNER, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

91.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1 - Notice to Attorney General).

92.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

93.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law § 40-c.

94.     § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

95.     Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

96.     Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

97.     Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

98.     Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the

provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

99.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination including civil penalties and fines pursuant to N.Y. Civil Law § 40 *et seq.*

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

100.    Plaintiff, TAVON TURNER, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

101.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

102.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

27

a.   A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.   A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.   A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.   An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.   Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.   Pre-judgment and post-judgment interest;

g.   An award of costs and expenses of their action together with reasonable attorneys' and expert fees; and

h.   Such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
          October 31, 2024

                              Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

Jon L. Norinsberg, Esq.
Bennitta L. Joseph, Esq.
*Attorneys for Plaintiff*
110 East 59th Street, Suite 2300
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
jon@norinsberglaw.com
bennitta@employeejustice.com